[No. 1674.]

### C. H. HILLIARD *v.* THE STATE.

1. AGGRAVATED ASSAULT — INFORMATION — CASE APPROVED.— It was correctly held in *Warren's* case (*ante*, p. 207) that an information which charges directly that the accused committed the offense is not defective because it states parenthetically, "as shown by the complaint of" A. or B. The doctrine is that the words in parenthesis, not being essential nor descriptive of the offense, may be treated as surplusage. See the statement of this case for an information which, though it shows a clerical omission in the commencement of the charging part, is nevertheless *held* sufficient to charge the offense of aggravated assault.

2. SAME — DEADLY WEAPON — FACT CASE.— Allegation in the indictment that the offense charged was committed with a deadly weapon, imposes upon the State the burden of establishing by proof the deadly character of such weapon. See the statement of the case for evidence *held* insufficient to support such an allegation.

APPEAL from the County Court of Van Zandt. Tried below before the Hon. J. S. Spinks, County Judge.

The information reads as follows:

"In the name and by the authority of the State of Texas: Now comes G. E. Rosenbaum, county attorney of Van Zandt county, State aforesaid, that one C. Hilliard (as shown by complaint of G. D. Woodley), on the 30th day of December, in the year of our Lord 1883, with force of arms, in the county and State aforesaid, did then and there make an aggravated assault upon the person of G. D.

Woodley, by then and there drawing a knife on him the said Woodley, and using said knife in an angry and threatening manner, with intent then and there to injure and alarm said Woodley, and under circumstances calculated to effect said object; the said knife being then and there a deadly weapon; contrary," etc. Upon this information the defendant was tried and convicted and fined in the sum of $25.

G. D. Woodley was the first witness for the State. He testified that, on the 30th day of December, 1883, he passed the defendant on the Canton and Quitman road in Van Zandt county, talking to Jay and Maze Carroll and Rufus Spears. All parties were on horseback. After the witness had passed the party some twenty steps, the defendant called out that he wanted to see witness, and witness stopped. Riding up to witness he asked when witness was going to pay him a sum of money he claimed witness was indebted to him. Witness replied that he was not going to pay it at all. The defendant then said that Ramsey and the witness had acted towards him like d—d rascals, and were trying to beat him out of his means. Witness replied to the defendant that he was a d—d liar, when both witness and defendant dismounted. Witness pulled off his gloves and was rolling up his sleeves, when the defendant drew his pocket-knife and started at the witness with it drawn. Witness backed some five or six steps, the defendant following with his drawn knife, and witness, putting his hand behind him, told the defendant that if he came on him with that knife, he, witness, would hurt him. About this time Jay Carroll rode up and remarked that that was no place for a difficulty, and witness and defendant agreed to meet at some other time and place and settle the dispute.

On cross-examination the witness stated that when he and defendant dismounted they took positions a foot and a half or two feet apart. When witness went to pull off his gloves he made one step backwards, and it was then defendant drew his knife. Witness had nothing in his pocket when he threw his hand behind him, but, being afraid defendant would cut him, made that motion to make defendant believe he had something with which he could hurt him. Ramsey and witness had bought a mare from the defendant. Witness had worked for Ramsey, and Ramsey was to pay for the mare. Witness told the defendant that the debt was just, but that he did not think he ought to pay it twice. The State closed.

Jay Carroll testified, for the defense, that he, Maze Carroll and the defendant, while riding along the Canton and Quitman road on

December 30, 1883, met Rufus Spears, and stopped to talk. While talking, Woodley passed the party. Defendant saw him, and remarked: "There goes a man I want to see." Witness told the defendant not to enter into a difficulty, and he said that he would not. When Woodley had passed the party some twenty steps the defendant called to him to stop, and rode down to where he was. Witness paid but little attention to them, but heard the defendant ask Woodley when he was going to pay him. Woodley said: "Not at all." The defendant then said that Ramsey and defendant had acted like d—d rascals and were trying to swindle him out of his mare. Woodley denounced defendant as a d—d liar and said something about fighting. The parties dismounted, and witness saw Woodley pull off his gloves, roll up his sleeves, step back five or six feet, throw his hand behind him and pull a pistol from his pocket far enough to expose the handle. Woodley then told defendant not to run on him with his knife. The witness thought that defendant had a knife in his hand at the time, but he did not see him advance on Woodley. The defendant had been whittling a stick for some time before, and did not return his knife to his pocket until after the difficulty. When the two men dismounted, the witness, thinking they were going to fight, rode up to them and told them they were too near a house, and got them to agree to meet and settle their difficulty elsewhere. The witness did not think that, at any time during the quarrel, the disputants were nearer each other than five or six feet.

Cross-examined, the witness stated that he knew positively that Woodley had a pistol. He certainly saw the handle of the weapon. He knew the pistol, had owned it, and from his position, some ten or twelve feet off, plainly saw his initials cut in the handle. Witness had ridden at least a mile with the defendant, and knew that for most of that distance, and during the talk with Spears, the defendant had his knife out whittling, and did not put it up until after the dispute. Witness heard Woodley tell the defendant that he did not think it right for him to pay for the mare twice; that he had paid Ramsey, and Ramsey was to pay the defendant.

The testimony of Maze Carroll differed from that of his brother Jay in that he did not see the defendant have his knife out prior to the difficulty, and he was with him all the time that Jay was; he was of opinion that the defendant advanced on Woodley a step or two with his knife out; he, the witness, was some six or eight feet from Woodley when he, Woodley, threw his hand behind him, but witness saw no pistol or part of a pistol.

Rufus Spears, for the State, in rebuttal, testified substantially as did Woodley as to what occurred after the defendant called on Woodley to stop. He saw no knife in defendant's hand prior to the difficulty. He did see the defendant advance on Woodley with his knife drawn. He saw no pistol on Woodley's person when he threw his hand behind him, and he thought he certainly would have seen it if he had one.

The motion for new trial assailed the charge of the court, attacked the information as insufficient to charge the offense, and denounced the verdict as unsupported by law or evidence.

*N. S. Bratcher* and *Kearby & McChesney*, for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE. There is evidently, we think, a clerical omission in the commencement of the charging portion of the information. If this be so, then under the decision in *Burrell Warren* v. *The State* (*ante*, p. 207), it is sufficient to charge the offense intended.

The charge was an aggravated assault committed with a knife, " a deadly weapon." We have examined the statement of facts in vain for any proof that the knife was a deadly weapon. Proof of this allegation was necessary to sustain a conviction under the charge.

Not being supported by the evidence, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

[Opinion delivered November 26, 1884.]